**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-10827-smr |
| BENTOLI, INCORPORATED, | § | (Small Business) |
| | § | CHAPTER 11 |
| DEBTORS. | § | |
| | § | |
| | § | |
| BENTOLI, INCORPORATED, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADV. PROC. NO. _____ |
| | § | |
| FRANK MARESMA and ACE Sales Corp. | § | |
| d/b/a SanaCare | § | |
| | § | |
| DEFENDANT | § | |

**ORIGINAL COMPLAINT TO AVOID PREFERENCES**

**TO THE HONORABLE JUDGE SHAD M. ROBINSON, U.S. BANRUPTCY JUDGE:**

**COMES NOW** Bentoli, Incorporated, debtor in possession ("Bentoli" or "Debtor") Plaintiff and files this Original Complaint to Avoid Preferences and respectfully shows:

**PARTIES**

**Plaintiff**

1. Bentoli is a corporation formed in Florida and authorized to do business in Texas. Bentoli maintains principal offices at 116 Hoxie Street, Coupland, Texas 78615. Bentoli is the debtor in possession in the above-styled bankruptcy case.

**Defendants**

2. Frank Maresma ("Maresma") is a citizen and resident of Florida who resides or maintains offices at 6750 Sw 73rd Ct., Miami, FL 33143. Maresma became a manager and person

in control of Bentoli in or after February 2022.[1] Maresma does or has done business, including with the Debtor, in Texas and in this judicial district and division. Maresma may be served at his residential address or wherever he may be found.

3. ACE Sales Corp., d/b/a SanaCare ("SanaCare") is a Florida corporation with principal offices at 8085 NW 68th Street, Miami, FL 33166. SanaCare may be served with summons through its registered agent, Frank Maresma, at its registered offices at 8085 NW 68th Street, Miami, FL 33166.[2]

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding seeks relief in a case arising in the above-styled bankruptcy case under 11 U.S.C. § 547 to recover preferential transfers of the Debtor and is a core proceeding within the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 157(b) (2) (A), (H) and (O).

5. Venue is proper in this Court. 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a), 541(a), and 547.

## FACTUAL BACKGROUND

7. Bentoli is a family-owned small business. William Robinson, Sr. began as a materials supplier to a burgeoning shrimp farming industry in the 1970s. The Robinsons began selling other livestock feed additives and over the years developed a substantial customer base and

---

[1] Maresma held himself out as Bentoli's "Managing Director" and a *defacto* member of its governing board. Bentoli's records do not include a record of any shareholder vote or board resolution appointing Maresma a director.

[2] Maresma and SanaCare are sometimes collectively called "Defendants" and each a "Defendant."

markets in South America exporting from the port of Miami. The Robinson's moved their operations from Minnesota to Miami and formed Bentoli, Incorporated in Florida in 1993. Bentoli has been involved in the agribusiness industry continuously since then, developing manufacturing and selling animal feed nutritive and preservative additives, among other products, for aquaculture and livestock.

8. Bentoli grew and was profitable over time. The Robinson's formed separate affiliates in Singapore, Thailand and India to capitalize on developing Asian markets and sales affiliates in Ecuador and Mexico.

9. By 2017, Bentoli's U.S. revenues were approximately $8 million ($20 million globally), but that growth necessitated bringing on professional management in then CEO John Robinson's view. He hired a Global President for that role.

10. In late 2017, John Robinson decided to resign his positions with Bentoli and agreed to sell back his interests in Bentoli under a buyout agreement effective March 2018. John provided critical financial oversight and business development direction to Bentoli during its growth in revenue and geographic reach.

11. Bentoli associated with Alexander Palencia in 2018 in hopes that he fill the financial management and international business development functions that John Robinson performed before his exit. When John Robinson departed, Bentoli also needed a cash infusion to bridge delays between incurring production costs and collecting sales revenues.

12. Palencia knew and had prior international business dealings with William Robinson, Sr. Palencia had the wherewithal to provide the funding and credit support Bentoli needed to operate and service its customers and its creditors. Palencia also supervised Bentoli's treasury, accounting and financial functions.

13. Palencia assumed effective control over Bentoli's financial and business affairs after coming on board in 2018. But Bentoli did not flourish under his management and stewardship. To the contrary, the company's revenues and profits reduced substantially; its need for Palencia financial support increased. Bentoli did not develop new banking relationships or attract new investment and the company became less healthy.

14. COVID-19 proved particularly challenging for many small businesses and Bentoli was no exception. In addition, a workplace accident resulting in a death at Bentoli's Elgin manufacturing offices brought unplanned financial and other pressures for Bentoli.

15. By mid-2021, Palencia made known that he desired pull the plug on his relationship with Bentoli and would terminate any support to Bentoli. Palencia's threatened dissociation endangered Bentoli's survival. Without equivalent financial support from another source, Bentoli likely could not have continued to conduct business. At his exit, Palencia received a $750,000 promissory note under which Bentoli would effectively reimburse Palencia dollar for dollar all funds Palencia ever provided to the company, despite the fact that Palencia claimed the note was consideration for the redemption of worthless shares that Palencia did not own.[3]

16. As early as June 2021, Edward Robinson discussed with Maresma the possibility of Maresma associating with Bentoli to take on the exiting Palencia's functions, including providing operating funds and credit support. Maresma was Edward Robinson's childhood friend. He also owns and operates SanaCare, a Florida-based medical supply distributor with international operations.

17. Maresma continued communications with Edward Robinson and later with William

---

[3] This note is the subject of a separate adversary proceeding Bentoli has filed in this bankruptcy case to avoid the note as a fraudulent transfer under Bankruptcy Code § 548.

Robinson about a possible investment in Bentoli. Maresma contends that he was promised 25% global ownership in Bentoli and its affiliates, but no stock purchase or shareholder agreement was ever prepared or executed and no shares ever issued to Maresma.

18. Nevertheless, by March 2022 Maresma assumed substantial management and day-to-day control of Bentoli, its accounts and financial operations and staff, including its AR/AP functions.

19. Soon after becoming involved, Maresma encouraged Bentoli to move its U.S. manufacturing operation away from direct manufacturing to an outsourced manufacturing model.

20. He moved Bentoli's U.S. operations headquarters from its Elgin facility to a leased space in Coupland unsuitable to conduct manufacturing operations. Under Maresma's stewardship, Bentoli disposed transferred some of its production line equipment to its Thailand and India affiliates and abandoned the rest where it sat in Elgin.[4]

21. Maresma's maneuvers effectively shut down Bentoli's U.S. manufacturing capabilities making the company essentially into a private label brand distributor operating out of Coupland offices unsuitable for that purpose also.

22. Under his direction, Maresma personally or through his companies, SanaCare and MadFraBia International Corp. ("MadFraBia") entered into dubious self-interested transactions with Bentoli. For example:

   a. He inserted SanaCare (a durable medical goods supplier) as the purchaser of chemical products Bentoli used in manufacturing, and then caused Bentoli to reimburse SanaCare at a markup.
   b. Although Maresma or his companies, SanaCare or MadFraBia, had no contract to charge any interest to Bentoli on funds provided to Bentoli, Maresma regularly invoiced Bentoli for interest on advanced funds at rates from 10.25% to 14.25%. Bentoli has been able to determine on review that Maresma paid

---

[4] The Elgin facility owner ultimately disposed the abandoned equipment at its cost.

himself more than $77,000 through these interest invoices.

23. In addition to the transactions in which Maresma profited directly, Maresma also sought to trade personally on Bentoli's good will and know-how through a company he created, Sauce Pit. Sauce Pit entered into agreements to develop and distribute animal feed from waste organic materials with the understanding Maresma and Edward Robinson would receive ownership twice as that Bentoli would receive and Maresma would individually receive additional profits from distribution.

24. Bentoli's books reflect that Maresma advanced $25,000.00 in total to Bentoli on September 6 and September 12, 2022.[5]

25. It appears that Bentoli and Maresma agreed that Maresma would receive monthly compensation of $14,583.34 for assuming the role as Bentoli's chief financial officer, Maresma decided to have "SanaCare provide the service or be compensated for his role as Managing Director." Although as chief financial officer Maresma supervised Bentoli's payable accounting and could have directed payments monthly, he carried the unpaid obligations on Bentoli's books as antecedent debts.

26. Maresma directed other actions inimical to Bentoli's interests. For example, on October 7, 2022, Giovani Huertas, a Bentoli accounting department employee, emailed Maresma asking how Maresma wished to handle the first $14,235.87 installment on the Alex Palencia promissory note, due in October.



---

[5] These deposits were for $20,000.00 and $5,000.00, respectively. It appears Maresma or his companies made other short-term advances to Bentoli ostensibly to smooth cash flow, which Bentoli repaid.

27. Within minutes, Maresma commanded the accountant not to pay the installment and directed him not to "get distracted with this" issue he characterized as one not for the company but for the Robinson Family.

> frank@bentoli.com <frank@bentoli.com>  Fri, Oct 7, 2022 at 9:48 AM
> To: Omar Huertas <omarh@bentoli.com>
>
> Giovanni,
>
> Unfortunately we'll not be able to comply with those terms. The company's revenue and cash flow will not permit us to adhere to the agreement the Robinson Family agreed to. Please do not get distracted with this as we'll allow the Robinson's to address with Mr. Palencia.

28. Despite then CEO Bill Robinson's direction to figure out a way to pay the installment, even if late, Maresma did not. Instead, Maresma allowed, and in fact directed, the default on which Palencia promptly sued.[6]

29. During Maresma's brief association with Bentoli, for reasons including Maresma's conduct and the consequences described above, it became clear that the company needed to conduct additional corporate restructuring. On February 21, 2023, the Florida attorneys Bentoli retained to advise it concerning corporation matters provided written notice to Maresma that Bentoli's shareholders of record intended to hold a notice of special meeting to address certain corporate regularization matters and requested that if Maresma contended he was then a shareholder, he remit confirming evidence. Maresma did not submit the information requested.

30. After receiving this communication, Maresma on March 17, 2023 wire transferred $131,250.06 from Bentoli's operating account to SanaCare. This amount is precisely (to the penny) 9 times the $14,583.34 monthly "compensation" amount Maresma claimed Bentoli then owed SanaCare or him for his services as alleged managing director.

31. On March 20, 2023, the very day of Bentoli's special shareholder meeting,

---

[6] The Debtor has filed an action against Palencia to avoid the note under Bankruptcy Code §548 and does not concede that it ultimately owes Palencia the sums contended. But the fact is that Maresma's sole decision contrary to the CEO's direction and without exploring any other options stands out as an act of insubordination that cast Bentoli into litigation that it could ill afford at a time when Maresma knew and intended that Bentoli would be harmed.

Maresma imitated another wire to himself for $25,000.00. This amount is exactly the amount of the two outstanding "loans" Maresma allegedly advanced to Bentoli on September 6, 2022 and September 12, 2022.

32. Bentoli's majority shareholders removed Maresma from his roles with the company on March 20, 2023 and on March 21, 2023; Bentoli requested that Maresma return the company's automobile, laptop computer and documents.

33. The same day, Maresma sent an email to one of Bentoli's key raw material suppliers ordering the freight forwarder not to deliver raw materials in transit to Bentoli because he thought Bentoli had retained bankruptcy counsel.

> From: Frank Maresma <frank.maresma@sanacare.com>
> Date: Tue, Mar 21, 2023 at 11:13 AM
> Subject: RE: Our Order# ER0019/23, Yr PO# P3748
> To: Jackie Mooring <Jackie@smith-air.com>, Margaret Joseph <mjoseph@cpmltt.com>, rbalgobin@cpmltt.com <rbalgobin@cpmltt.com>, mborde@cpmltt.com <mborde@cpmltt.com>
> Cc: Keith St Louis <kstlouis@cpmltt.com>, Saeeda karimullah <skarimullah@cpmltt.com>, Malcolm Borde <mborde@cpmltt.com>, Darryl Chin - cpml <dchin@cpmltt.com>, Chinnaraj Vilingiri <chinnarajv@bentoli.com>
>
> Malcolm,
>
> Good morning! It was good to catch up yesterday given the unfortunate circumstances. Please accept this notice of urgency and your immediate attention as was discussed during our call.
>
> **Under NO Circumstances are the containers from Purchase Orders #P3747 & #P3748 to be released to Bentoli Inc without SanaCare's or Frank Maresma express written consent.**
>
> The majority ownership in Bentoli, Inc has retained counsel which specializes in Bankruptcy. This has an immediate affect on any business between SanaCare and Bentoli.

34. After his separation from Bentoli, Maresma threatened to sue the company and went so far as to forward a prolix draft lawsuit he threatened to file in Florida suggesting his ownership of Bentoli and other matters.

35. Bentoli retained counsel who was able quickly to do some due diligence into Maresma's allegations and financial dealings, certainly enough to identify the clear nature of the preference payments described in this suit. Bentoli and Maresma attempted a pre-suit mediation with a qualified mediator at which Maresma offered little more in the way of information and nothing that suggested any viable defense to the preference payments he and SanaCare received at his sole direction for his benefit.

- 8 -

36. Maresma was an insider during his tenure at Bentoli, and so was SanaCare, his entity that he controlled.

37. The Debtor in Possession is still investigating the circumstances regarding Maresma conduct and misconduct and reserves the right to assert such causes of action by amendment or suit as are warranted based on that investigation.

### CLAIMS FOR RELIEF

### COUNT I
### 11 U.S.C. § 547-AVOIDABLE PREFERENCE

38. The Debtor adopts and incorporates by reference paragraphs 1 – 37 as if set forth in full herein.

39. Bankruptcy Code § 547(b) authorizes a debtor in possession, including the Debtor here, to avoid any transfer of an interest of the debtor in property-

1) to or for the benefit of a creditor;
2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
3) Made while the debtor is insolvent;
4) Made within one-year of the petition date where the creditor at the time of the transfer was an insider.
5) That enables the creditor to receive more than the creditor would receive if the case were one under Chapter 7 and the transfer had not been made and the creditor received the payment.

40. All of these elements are undeniably present here. Maresma was an insider in control of Bentoli's financial accounts caused the payments described in this complaint to him and to SanaCare in the amount of at least $156,250.06 during the preference period on account of alleged owed consulting fee compensation and advances to support cash flow—each antecedent debts. Bentoli was at the time insolvent and SanaCare and Maresma received the transferred payments. It is clear that Maresma and SanaCare received more than either would have been received in a Chapter 7 liquidation.

41. Maresma knew and believed that a bankruptcy might be on the immediate horizon; he advertised as much in his email attempting to interfere with the delivery of Bentoli's raw materials. Bentoli's liabilities at the time, including $750,000 note given to Palencia, exceeded its assets at a fair valuation an, according Maresma himself, could not pay obligations as they came due, evidently including but not limited to compensation owed to SanaCare for him and the $750,000.00 Palencia note installments he said the company had no funds to pay.

42. Because Bentoli is entitled to avoid these preferences under 11 U.S.C. § 547, Bentoli is entitled to recover the transfers or their value from Maresma and SanaCare, as the case me be, through § 550(a) (1).

## PRAYER FOR RELIEF

**WHEREFORE**, the Debtor prays that summons issue commanding Defendants to appear, and that upon hearing the Debtor have judgment pursuant to 11 U.S.C. § 547 and § 550(a) (1) against Defendants:

  a. Avoiding and voiding Maresma's transfers to himself and SanaCare in the respective amounts of $25,000.00 and $131,250.06.
  b. Awarding Bentoli its costs in accordance with law; and
  c. Awarding Bentoli such other and further relief, in law or in equity, to which the Debtor may be entitled.

Dated: October 1, 2023.

        Respectfully submitted,

*/s/ Brian S. Engel*
**Brian S. Engel** (SBN 00789279)
**Barrett Daffin Frappier Turner & Engel, LLP**
4004 Belt Line Rd., Suite 100
Addison, Texas 78620
Phone: (512) 687-2503
Fax: (512) 477-0008
brianen@bdfgroup.com
**SPECIAL LITIGATION COUNSEL FOR BENTOLI, INC., DEBTOR IN POSSESSION**

        RONALD J. SMEBERG
        State Bar No. 24033967
        THE SMEBERG LAW FIRM, PLLC
        4 Imperial Oaks
        San Antonio, Texas 78248
        210-695-6684 (Tel)
        210-598-7357 (Fax)
        ron@smeberg.com

        **ATTORNEY FOR DEBTOR**